AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>HUGO PENA<br><br>_____<br>*Defendant(s)* | )<br>)  Case No.  10- 6240-BSS<br>)<br>)<br>)<br>) |

FILED by _____ D.C.

JUN - 9 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - FT. LAUD.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 15, 2010__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1001(a)(2) | knowingly and willfully making any materially false, fictitious, or fraudulent statement or representation in a matter within the jurisdiction of the executive branch of the Government of the United States |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Greg S. Bishop, Special Agent, CGIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   06/09/2010

_____
*Judge's signature*

City and state:    Fort Lauderdale, Florida         Barry S. Seltzer, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Greg S. Bishop, being duly sworn, depose and say:

I am a Special Agent with the United States Coast Guard Investigative Service ("CGIS"). I have worked in this position since August, 2008. Prior to joining CGIS, I spent twenty years in the United States Coast Guard ("Coast Guard") as an active duty member. I am currently assigned to CGIS' Miami Field Office where I investigate violations of the Uniform Code of Military Justice and conduct criminal investigations of federal law, including 33 U.S.C. § 1901 *et seq.*, the Act to Prevent Pollution from Ships.

The facts of this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers while in my official capacity. I am submitting this affidavit for the limited purpose of establishing probable cause for a criminal complaint against Hugo PENA, whose date of birth is February 20, 1965 (hereinafter referred to as PENA). This affidavit does not include every fact that I know about this investigation.

MARPOL and APPS

The United States is a party to two related marine environmental treaties that seek to eliminate intentional discharges of oil from vessels at sea: the 1973 International Convention for the Prevention of Pollution from Ships, Nov. 2 1973, U.N.T.S. 184, and the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships, Feb. 17, 1978 1340 U.N.T.S. 184. The treaties came into force on October 2, 1983 and are jointly referred to as "MARPOL 73/78" or "MARPOL"). See 33 C.F.R. § 151.05 (definitions). MARPOL has been legislatively implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901 - 1912. APPS makes it a crime for any person to knowingly violate

MARPOL, APPS, or regulations promulgated under APPS. 33 U.S.C. § 1908(a). These regulations apply to all commercial vessels operating in United States waters or while at a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States.

MARPOL and APPS set the legal standards governing a ship's handling and discharge of its oil. A ship may discharge oil-contaminated water overboard into the ocean only if the oil content is less than 15 parts per million ("ppm"). The principal technology utilized to lower the petroleum content of oil-contaminated water is a centrifugal separation machine, also known as an Oil Water Separator. Under Annex I of M/ MARPOL, a ship weighing 400 gross tons or above must have a functioning Oil Water Separator.

The Role of Classification Societies

"Flag states" (*i.e.*, nations that register vessels) certify the compliance of vessels flying under their authority with international laws such as MARPOL. The Republic of Panama ("Panama") is a party to MARPOL and is the flag state of the M/V Island Express I. A flag state that is a party to MARPOL may issue an International Oil Pollution Prevention ("IOPP") Certificate for a ship after a survey of the ship reveals that it complies with MARPOL. International Maritime Organization ("IMO"), MARPOL Consolidated Ed. 61 (2006) (Annex I, Regulation 7). A flag state may also delegate the authority to conduct surveys and issue certificates to a recognized classification society. IMO, MARPOL Consolidated Ed. 59 (2006) (Annex I, Regulation 6.3.1).

Classification societies are organizations that establish and apply technical standards in relation to the design, construction and survey of marine facilities, including ships. A vessel designed and built to the appropriate rules of a society may apply for a certificate of classification

from that society. The society issues this certificate upon completion of relevant classification surveys. The certificate is an attestation that, at the time of the survey, the vessel is in compliance with the standards that have been developed and published by the society issuing the classification certificate.

Universal Shipping Bureau, Inc. ("USB") is a classification society with its principal place of business in Panama City, Panama. The government of Panama has authorized USB to conduct surveys and issue certificates, such as an IOPP Certificate, on its behalf to ships registered in Panama.

In order to issue an IOPP Certificate, the attending class surveyor must conduct a complete survey of the ship's structure, equipment, systems, fittings, arrangements, and material and ensure that they fully comply with the applicable requirements of MARPOL. IMO, MARPOL Consolidated Ed. 58 (2006) (Annex I, Regulation 6.1.1).

A ship of 400 gross tons or above must maintain its IOPP Certificate on board. 33 C.F.R. § 151.19(b). While at a United States port or terminal, a ship, regardless of its flag state, is subject to inspection by the Coast Guard to determine that a valid IOPP Certificate is on board and that the condition of the ship and its oil pollution prevention equipment corresponds substantially with its IOPP Certificate. 33 C.F.R. § 151.23(a)(1).

Definitions

**Bilge** is a mix of oil and water that accumulates during the operation of the ship's engines.

The **Oil Record Book** is a log in which, pursuant to MARPOL and APPS, a ship records the quantity of substances held in the ship's various holding tanks, including the bilge tank. MARPOL and APPS require that a ship 1) maintains an Oil Record Book on board for inspection by the Coast Guard, 2) records overboard discharges of bilge and sludge, and 3) maintains an

accurate Oil Record Book. In the process of making entries in the Oil Record Book, the engine crew records the quantity of bilge that accumulates during operation of the ship.

The **Oil Water Separator** is the equipment on board a ship for processing bilge. The running of the ship's engine naturally produces bilge. Ships send bilge from a bilge holding tank, where it accumulates, into the Oil Water Separator, which separates it into water and sludge. The bilge, which the Oil Water Separator purifies to an oil content less than 15 parts per million, is then used or pumped overboard. The sludge, which the ship holds in a sludge tank, is then delivered to appropriate onshore facilities when the ship is in port.

The Investigation

The M/V Island Express I is a 170-foot-long, 422-ton coastal freighter operated by G&G Marine, Inc. It is registered in Panama, home-ported in Port Laudania, Florida, and typically makes short trips between Florida and the Bahamas.

PENA is a permanent resident who lives in Miami, Florida and is associated with HP MARITIME CONSULTANT, a company that conducts ship registration, surveys, audits, and marine consultation as a subcontractor for classification societies. PENA is a subcontractor for for UBS.

On May 4, 2010, a Coast Guard port state control team boarded the M/V Island Express I to conduct a routine inspection of the ship. While reviewing the ship's Oil Record Book, the boarding team noticed that the crew of the M/V Island Express I had not used the ship's Oil Water Separator since January 4, 2007 and further that the Oil Record Book did not explain how the ship discharged its bilge. They discovered that the Oil Water Separator was inoperable and that the ship did not possess an instructional manual for the Oil Water Separator. The boarding team noticed a portable, submersible pump on the starboard and port side of the ship. On the starboard

side, the submersible pump was in the bilge space and connected to a plastic pipe that led from the submersible pump up along the starboard wall to the main deck of the ship, where it drained freely onto the deck and overboard. On the port side, the submersible pump was on the engine room deck. On the port bulkhead, there was another plastic pipe that traveled from the port bilge spaces up to the ship's main deck, where it also drained freely onto the deck overboard.

The Coast Guard inspectors asked the chief engineer to operate the Oil Water Separator. The Chief Engineer tried to operate the Oil Water Separator but appeared to be unfamiliar with it. The Coast Guard inspectors then realized that it was inoperable.

The Coast Guard inspectors then reviewed the Oil Record Book. It contained no entries for usage of the submersible pumps, and the last entry reflecting usage of the Oil Water Separator was dated January 4, 2007.

The Coast Guard Boarding team also reviewed the M/V Island Express I's IOPP Certificate. It was signed on April 15, 2010 by PENA in his capacity as a USB class surveyor. The Certificates stated that:

1. That the ship has been surveyed in accordance with regulation 4 of Annex I of [MARPOL].[1]

2. That the survey shows that the structure, equipment, systems, fittings, arrangement and material of the ship and the condition thereof are in all respects satisfactory and that the ship complies with the application requirements of Annex I of [MARPOL].

The Certificate is signed "For the UNIVERSAL SHIPPING BUREAU Inc., Hugo PENA/The Attending Surveyor." Below the signature block, it states that "[t]he undersigned declares that USB is duly authorized by the Government [of Panama] to issue this Certificate." The survey occurred at Port Lavdania, Florida, which is located in Broward County.

On approximately May 4, 2010, a Coast Guard inspector questioned PENA about his

---

[1] Prior to the 2005 Amendments to MARPOL, regulation 4 addressed the requirements of surveys. See IMO, MARPOL 73/78 Consolidated Edition 51-53 (2002) (Annex I, Regulation 4). The 2005 Amendments recodified this part as Regulation 6. See IMO, MARPOL Consolidated Edition 58-60 (2006) (Annex I, Regulation 6).

survey. PENA stated that he did not survey the Oil Water Separator prior to issuing the IOPP Certificate because the chief engineer of the M/V Island Express I told him that it was inoperable.

Based upon my training and experience, and as further supported by the facts in this affidavit, I respectfully submit that there is probable cause to believe that Hugo PENA, did knowingly and willfully make a materially false, fictitious, or fraudulent statement matter within the jurisdiction of the Department of Homeland Security, United States Coast Guard, an agency of the executive branch of the Government of the United States, in that he certified that the structure, equipment, systems, fittings, arrangements and material of the M/V Island Express I and the condition thereof were in all respects satisfactory and that the ship complied with Annex I of MARPOL, when in truth and in fact and as the defendant then and there well knew, the M/V ISLAND EXPRESS I did not comply with Annex I of MARPOL; in violation of Title 18, United States Code, Section 1001(a)(2)

I declare under penalty of perjury that the information in this affidavit is true and correct.

GREG S. BISHOP, SPECIAL AGENT
COAST GUARD INVESTIGATIVE SERVICE

SUBSCRIBED and SWORN to
before me this ___ day of June 2010 in Fort Lauderdale, Florida.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-6240-BSS

UNITED STATES OF AMERICA

vs.

HUGO PENA,

        Defendant.
_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

                              Respectfully submitted,

                              WIFREDO A. FERRER
                              UNITED STATES ATTORNEY

BY: _____
      Jaime A. Raich
      ASSISTANT UNITED STATES ATTORNEY
      Florida Bar No. 0040111
      99 N. E. 4th Street
      Miami, Florida 33132-2111
      TEL (305) 961-9124
      FAX (305) 536-4651